IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

D&G INC., d/b/a/ Gary's Foods and
ROBERT WARREN WENTWORTH
JR., INC., d/b/a Rangeley IGA, on behalf of
themselves and all others similarly situated,

                              Plaintiffs,

      v.

SUPERVALU, INC. and C&S WHOLESALE
GROCERS, INC.,

                              Defendants.

OPINION and ORDER

08-cv-761-slc[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiffs D&G Inc. and Robert Warren Wentworth Jr., Inc. have filed this proposed antitrust class action, alleging that defendants SuperValu, Inc. and C&S Wholesale Grocers, Inc. entered into an unlawful agreement to allocate the Midwest and New England markets for the supply of wholesale groceries. Now before the court is defendants' joint motion to transfer venue to the District of Minnesota pursuant to 28 U.S.C. § 1404(a).

I will grant defendants' motion because I am persuaded that the transferee district is

---

[1] The parties have declined the jurisdiction of the magistrate judge. Because no Article III judge has been assigned to this case, I have assumed jurisdiction over the case temporarily to resolve the parties' current disputes.

"clearly more convenient" to the parties. One of the two defendants has its principal place of business in the transferee district, no party has any ties to this district and the only connection plaintiffs can identify between this case and this district is the fact that the alleged antitrust violations resulted in the closure of a distribution center in La Crosse, Wisconsin, a fact that does not appear to be relevant or disputed. As for plaintiffs' contention that the motion should be denied because transfer is likely to cause delay, I am not persuaded that this concern is realistic or that plaintiffs have a special need to achieve speedy resolution of their case.

From the complaint and the parties' submissions related to defendants' motion to transfer, I draw the following facts for the purpose of addressing defendants' motion.

FACTS

A.  Parties

Plaintiff D&G is an Iowa corporation with its principal place of business in Mount Vernon, Iowa. Plaintiff Robert Warren Wentworth Jr., Inc. is a Maine corporation with its principal place of business in Rangeley, Maine. Defendant SuperValu is a Delaware corporation with its principal place of business in Eden Prairie, Minnesota. Defendant C&S is a Vermont corporation with its principal place of business in Keene, New Hampshire. Defendants are wholesale grocery providers that supply products and services to retail

2

grocery stores. Plaintiffs own and operate retail grocery stores.

### B. The Lawsuit

In 2003, defendant C&S entered the Midwest wholesale grocery distribution market by acquiring three large distribution facilities from a distressed wholesaler named Fleming. The facilities were located in Waukesha, Wisconsin; La Crosse, Wisconsin; and Massillon, Ohio. In September 2003, defendants entered into an "Asset Exchange Agreement" in which defendant C&S agreed to assign to defendant SuperValu its right to acquire the three distribution centers and other Fleming assets and defendant SuperValu agreed to sell C&S its New England distribution centers and other operations. Defendants' representatives negotiated the terms of this agreement at defendant SuperValu's headquarters in Minnesota and at defendant C&S's former headquarters in Vermont. Defendant C&S met with individuals in and around La Crosse to discuss competing against SuperValu. Shortly after the parties entered into the asset exchange agreement in September 2003, both C&S and SuperValu closed the distribution centers that each received as part of the agreement.

On December 31, 2008, plaintiffs filed this lawsuit, alleging that the parties agreed to exchange the distribution centers to allocate the market and that this agreement caused them to pay "charges for grocery wholesale goods and services to Defendants that were higher than they would have been but for Defendants' unlawful agreements." In addition,

3

plaintiffs allege that "through various devices and techniques of secrecy," defendants "fraudulently concealed the existence of the unlawful contracts, combinations and conspiracies alleged herein," concealed the "anticompetitive terms" of the asset exchange agreement and "misled Plaintiffs and [potential class] members . . . as to the true, collusive and coordinated nature of their market and customer allocation and other illegal anticompetitive activities. " Cpt., dkt. #17, at 13-14.

Plaintiffs ask for both monetary and injunctive relief. Their request for injunctive relief is simply that they receive "such injunctive relief as they may be entitled to by law." Id. at 24. Plaintiff D&G has not bought wholesale goods or services from either defendant since 2005 and plaintiff Robert Warren Wentworth has not bought wholesale goods or services from either defendant since 2004.

## C. Local Effect of Alleged Antitrust Violations

According to plaintiffs, as a result of the parties' agreement, grocery wholesale prices increased for retailers that could have obtained products from the La Crosse distribution centers, which would include retailers located in this district and retailers located in Iowa, such as plaintiff D&G. At the time of the asset exchange and subsequent closure of the facilities, plaintiff D&G obtained products from two SuperValu distribution facilities located more than 250 miles away. If SuperValu had decided not to close the just-purchased La

Crosse facilities, plaintiff D&G may have obtained products from this closer facility. Or, if C&S had not assigned the facilities in the first place, plaintiff D&G may have had a viable competitive alternative to obtaining products from SuperValu. Aside from its impact on retailers, closure of the La Crosse facility caused employees at the facility to lose their jobs, which plaintiffs allege caused a notable economic impact throughout this district.

D.  Witnesses

Nearly all the SuperValu personnel involved with the asset exhange with C&S are located in Minnesota and work out of its headquarters. The "vast majority" of other personnel that SuperValu has identified to date as having personal knowledge regarding the parties' dispute are located in Minnesota. Approximately three dozen Minnesota-based employees were involved in the due diligence, negotiation and execution of the asset exchange agreement.

At least seven of those three dozen are no longer employees of SuperValu. Of those seven, former senior corporate counsel Sheila Hagen and former Vice President of Financial Planning James Stoffel were "central" to the negotiations and the decision to enter into the agreement, although all seven are believed to have knowledge related to the due diligence, negotiation or execution of the asset exchange agreement. Hagen was SuperValu's "lead negotiator" and Stoffel was responsible for financial investigation of the asset exchange.

5

Both Hagen and Stoffel reside in Minnesota.

Defendant C&S has identified Mark Gross, its former Chief Financial Officer, as the key employee involved in the asset exchange agreement that plaintiffs allege violated antitrust laws. He resides in New Hampshire. Most of the paper and electronic documents pertaining to the asset exchange transaction are stored at defendants' respective headquarters in Minnesota and New Hampshire.

### E.  Expected Time to Trial

In the present case, trial is set for August 23, 2010. However, this trial date is tentative because no Article III judge has been assigned to this case. Currently, one of the two district judges in this district is on medical leave and has taken senior status. To insure that cases are addressed as efficiently as possible, half of the incoming cases are assigned randomly to Magistrate Judge Stephen Crocker. In the event that the parties in those cases decline his jurisdiction (such as in this case), the court assumes that a new district judge will be appointed in time to try the cases. As of 2007, the median time from filing to trial in this district was 10.4 months and the median time from filing to trial in the District of Minnesota was 29 months.

## OPINION

Defendants have moved to transfer this case to the District of Minnesota pursuant to 28 U.S.C. § 1404(a). (Although defendants have moved in the alternative for transfer to the District of New Hampshire, I need not consider their arguments in favor of transfer to that venue because I conclude that transfer to the District of Minnesota is proper.) Transfer under § 1404(a) is proper when (1) venue is proper in the transferor district; (2) the transferee district is one in which the action could have been brought; and (3) the transferee court is "clearly more convenient." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986). The parties do not dispute that venue is proper here and that the action could have been brought in the District of Minnesota; the only issue is whether that district is "clearly more convenient" for the parties than this one.

In deciding whether a transferee district is "clearly more convenient" than the transferor district, a court considers the relative convenience of the districts for the parties and witnesses and whether transfer will promote the interest of justice. Issues such as the situs of material events, ease of access to sources of proof, plaintiffs' choice of forum and relative docket speed are all relevant to this decision. Id. at 219 n.3, 221; Harley-Davidson, Inc. v. Columbia Tristar Home Video, Inc., 851 F. Supp. 1265, 1269 (E.D. Wis. 1994); Kinney v. Anchorlock Corp., 736 F. Supp. 818, 829 (N.D. Ill. 1990).

A. Choice of Forum

Plaintiffs contend that their choice of forum should be afforded deference. Generally, a plaintiff's choice of forum deserves less deference when a plaintiff chooses to litigate outside his home forum because it is less reasonable to assume that a plaintiff is choosing such a forum for convenience.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981).

Plaintiffs do not deny that this district is not their home forum.  Nonetheless, they contend that their choice of forum should be given deference because this district is the "situs of material events."  It may be reasonable to assume that a plaintiff would choose a forum that is the situs of material events for its convenience, in which case deference would be proper.  Cf. Chicago, Rock Island & Pacific Railroad Co. v. Igoe, 220 F.2d 299, 304 (7th Cir. 1955) (suggesting choice of forum may be given deference if material events occur in district).  However, plaintiffs fail to make a persuasive showing of the materiality of events that occurred in this district.  The only event that occurred in this district is the closing of the La Crosse distribution center.  Defendants' alleged market allocation agreement happened elsewhere, as did the impact on plaintiffs, whose retail stores are all located outside this district.

Plaintiffs point out that retailers in Wisconsin were likely affected by the closure as well and that the closure had a general economic impact in the district, causing a mass layoff of workers.  Unfortunately for plaintiffs, neither of those points is relevant.  The general economic impact of the distribution centers' closure is not at issue; this antitrust lawsuit

involves the specific economic impact on grocery retailers. As for the effect of the closure on retailers in Wisconsin, none of them have joined the case as parties. In other words, at this stage, the case involves only the economic impact on *plaintiffs*, which occurred outside this district. If the case is certified as a class action, it may include Wisconsin retailers, but such a possibility is too speculative to warrant special deference to plaintiffs' choice of forum.

At any rate, even if the closing of the La Crosse distribution center could be said to be "material," this would not help plaintiffs because nothing about the closure appears to be in dispute. Plaintiffs' choice to litigate in a forum in which certain events occurred deserves no special deference when it is undisputed that these events took place, regardless whether the events are "material" to the lawsuit. Chicago, Rock Island, 220 F.2d at 304 (no deference for choice of forum when "no controverted question depends on any event occurring" in district).

### B. Convenience of Parties

The District of Minnesota is clearly more convenient for defendant SuperValu. Its headquarters and principal place of business are located in that district, as are dozens of employees who worked on the allegedly illegal asset exchange agreement. (It is irrelevant that electronic and paper documents are located in Minnesota, given the portability of such

documents.) As for the other parties, there appears to be no identifiable difference in convenience between districts. Plaintiffs and defendant C&S are located elsewhere and do not say they have documents or employees located in this district or in the District of Minnesota.

Plaintiffs contend that the employee witnesses located in the District of Minnesota would be testifying to establish a "business excuse," a point they argue is irrelevant in this case because plaintiffs contend that defendants' agreement amounts to a "naked restraint of trade," for which business excuses are no defense. United States v. Topco Associates, Inc., 405 U.S. 596, 610 (1972). However, plaintiffs do not argue that this is their *only* theory; they assert a rule-of-reason theory for their Sherman Act § 1 claims, cf. Polk Bros., Inc. v. Forest City Enterprises, Inc., 776 F.2d 185, 189 (7th Cir. 1985) (explaining difference between "naked restraints" and restraints analyzed under rule of reason) and they allege that there are no legitimate business justifications for defendants' actions in alleged violation § 2 of the Sherman Act. Defendants' evidence of a "business excuse" is relevant to either of these theories and therefore cannot be disregarded.

C. Convenience of Witnesses

The District of Minnesota would be more convenient for some witnesses. In particular, dozens of defendant SuperValu's employees have information about the asset

10

exchange agreement and at least two non-party witnesses located in Minnesota were key in negotiating and executing the agreement. Against this, plaintiffs state vaguely that there are "likely numerous non-party witnesses" in this district because defendants met with individuals in La Crosse to discuss competing against SuperValu. However, plaintiffs do not explain who these individuals might be or where they are located.

As plaintiffs point out, the number of non-party witnesses specified by name (two) is almost insubstantial. However, this evidence is but one piece of the larger analysis; it must be considered in light of the evidence that dozens of employee witnesses located in Minnesota are expected to have information relevant to the asset exchange and that one of the two defendants has its principal place of business and headquarters there. Together, these things establish that the District of Minnesota is "clearly more convenient" for defendant SuperValu and for the witnesses.

I agree with plaintiffs that the relative convenience of litigating in the District of Minnesota is lessened in light of technological advances, but I am still persuaded that the convenience of the parties and witnesses weighs in favor of the District of Minnesota.

D.  <u>Interest of Justice</u>

Plaintiffs have one more string to their bow. They contend that the case should not be transferred for the reason that many advance when facing a motion to transfer venue in

11

this district: speed. Speed is a valid concern, <u>Coffey</u>, 796 F.2d at 221 ("Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system."); <u>In re National Presto Industries, Inc.</u>, 347 F.3d 662, 664 (7th Cir. 2003) (lighter docket speed of proposed transferee district relevant to interest of justice analysis), one that may even be dispositive, <u>Coffey</u>, 796 F.2d at 219-20 (interest of justice may be determinative factor); <u>Roberts & Schaefer Co. v. Merit Contracting, Inc.</u>, 99 F.3d 248, 254 (7th Cir. 1996).

Plaintiffs contends that transfer would not further the interest of justice because plaintiffs could expect substantial delay in the District of Minnesota, pointing out that the median time to trial in that district is 29 months, substantially longer than the median time to trial in this district. However, the unusual circumstances of this case make those 2007 statistical estimates of median time to trial as uncertain as the actual trial date set in this case. Because this case has not yet been assigned to an Article III judge and is not likely to be so assigned until a new judge has been appointed, it is difficult to say how quickly the parties may expect a trial. Although plaintiffs are correct that some delay is likely to occur if this case is transferred, I am less certain that the delay is substantial given the current circumstances of this district.

This is not plaintiffs' only problem. As defendants point out, it is not clear how plaintiffs expect to obtain injunctive relief. If, as defendants contend, plaintiffs may be

compensated with money damages, there is less need for speedy resolution. Although plaintiffs seek injunctive relief in their complaint, they do not explain how they might be entitled to such relief. The alleged antitrust violations arise from an agreement defendants entered into in 2003.

Plaintiffs assert that defendants' unlawful agreement is ongoing, that plaintiffs and potential class members continue to suffer substantial harm and that defendant SuperValu has stated that it "is hoping to enter similar agreements." Plts.' Br., dkt. #29, at 9. However, plaintiffs' only alleged injury is that of having paid more for goods purchased from defendants, and neither plaintiff has purchased any goods from defendants since 2005 at the latest. The allegations provide little basis to draw an inference that injunctive relief might be available to plaintiffs. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (Rule 8 requires request for relief to be "plausible on its face"); see also Limestone Development Corp. v. Village of Lemont, 520 F.3d 797, 803 (7th Cir. 2008) (under Twombly, plaintiff must plead a "a fuller set of factual allegations" to show his claim is not "largely groundless" in complex cases such as those arising under antitrust law).

As for the possibility that potential class members may have better grounds for injunctive relief than plaintiffs, it is too speculative. No potential class member is identified. Moreover, to the extent plaintiffs have no viable basis for injunctive relief, it may be difficult to certify a class including those seeking injunctive relief, in light of class certification

13

requirements such as typicality and adequate representation. Fed. R. Civ. P. 23(a)(3)-(4)).

Finally, defendants raise the possibility that plaintiffs delayed filing suit, another reason to afford less weight to their request for speed. Plaintiffs contend that they did not delay filing suit, pointing out that they have alleged that defendants concealed their antitrust violations. If that is the case, plaintiffs' delay could not be held against them. However, it is curious that plaintiffs decided to say so little about how or when they discovered the antitrust violation or why they did not discover it until more than five years had passed. After all, defendants argued in their initial brief that the original exchange agreement was widely publicized. Dfts.' Br., dkt. #22, at 14. If plaintiffs hoped to rely on their need for speed, they should have explained why the public nature of the exchange agreement did not give them notice of their current cause of action. They did not.

I am not persuaded that the interest of justice weighs against transfer. Because plaintiffs have failed to set out plausible grounds for the injunctive relief they seek or explain their five-year delay in bringing this suit, I am not persuaded that speed is crucial in this case or that plaintiffs have an interest in speedy resolution of the case. Moreover, because there is no Article III judge assigned to this case, it is unlikely that the case could be resolved more quickly here than in Minnesota.

In sum, the factors weigh in favor of transfer. The District of Minnesota is "clearly more convenient" for the parties and witnesses. It would not further the interest of justice

14

to stand in the way of such transfer. I will grant defendants' motion to transfer to the District of Minnesota under 28 U.S.C. § 1404(a).

One final matter requires attention. After defendant filed their motion to dismiss, several other motions are ready to be decided. In particular, defendants have moved to dismiss the case as time-barred and pursuant to Fed. R. Civ. P. 8. Dkt. #33. In connection with that motion, they have moved for leave to submit materials outside the pleadings, dkt. #37, and for leave to stay discovery until the motion to dismiss is resolved, dkt. #35. In addition, because Magistrate Judge Crocker granted a limited stay of discovery on March 4, 2009, plaintiffs have filed a motion for early, limited discovery. Dkt. #51. Because I have decided that the case should be transferred pursuant to 28 U.S.C. § 1404(a), it would not be proper to consider the merits of the motion to dismiss or make decisions about the scope of allowable discovery while the motion to dismiss remains pending or about what materials may be considered in the context of the motion to dismiss. Therefore, I will decline to rule on these issues.

ORDER

IT IS ORDERED that the motion to transfer venue filed by defendants SuperValu, Inc. and C&S Wholesale Grocers, Inc. pursuant to 28 U.S.C. § 1404(a), dkt. #21, is

GRANTED.  The clerk of court is directed to transmit the case file to the United States District Court for the District of Minnesota.

      Entered this 23rd day of April, 2009.

                              BY THE COURT:

                              /s/

                              _____
                              BARBARA B. CRABB
                              District Judge