UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re Wholesale Grocery Products            **MEMORANDUM OPINION**
Antitrust Litigation                                        **AND ORDER**
                                                                       Court File No. 09-MD-2090 ADM/TNL

This Order Relates to All Actions

---

W. Joseph Bruckner, Esq., Elizabeth R. Odette, Esq., and Kate M. Baxter-Kauf, Esq., Lockridge Grindal Nauen PLLP, Minneapolis, MN; Richard B. Drubel, Esq., and Kimberly H. Schultz, Esq., Boies, Schiller & Flexner LLP, Hanover, NH; Daniel A. Kotchen, Esq., and Daniel L. Low, Esq., Kotchen & Low LLP, Washington, DC; and Edward T. Dangel III, Esq., Dangel Dwyer, LLC, Boston, MA, on behalf of Plaintiffs.

Stephen P. Safranski, Esq., Martin R. Lueck, Esq., K. Craig Wildfang, Esq., Heather M. McElroy, Esq., and Damien A. Riehl, Esq., Robins Kaplan LLP, Minneapolis, MN, on behalf of Defendant SuperValu, Inc.

Todd A. Wind, Esq., and Nicole M. Moen, Esq., Fredrikson & Byron, PA, Minneapolis, MN; and Christopher J. MacAvoy, Esq., and Charles A. Loughlin, Esq., Baker Botts LLP, Washington, DC, on behalf of Defendant C&S Wholesale Grocers, Inc.

---

## I. INTRODUCTION

This matter is before the Court on remand from the Eighth Circuit for further proceedings on Defendants SuperValu, Inc. ("SuperValu") and C&S Wholesale Grocers, Inc.'s ("C&S") (collectively, "Defendants" or "Wholesalers") Partial Motion to Dismiss or Stay [Docket No. 113]. See King Cole Foods, Inc. v. SuperValu, Inc. (In re Wholesale Grocery Prods. Antitrust Litig.), 707 F.3d 917, 924-25 (8th Cir. 2013). The issue on remand is whether Defendants may, under the successor-in-interest doctrine, enforce arbitration agreements that they have assigned.[1]

---

[1] Additional issues resulting from a subsequent Eighth Circuit decision in this litigation will be addressed in a separate order to be issued at a later date. See Case Management Order [Docket No. 498] ¶ 2 (identifying additional issues); In re Wholesale Grocery Prods. Antitrust Litig., 752 F.3d 728, 735-37 (8th Cir. 2014) (reversing grant of summary judgment for Defendants and remanding on issue of whether to certify narrower class).

Id.  For the reasons set forth below, the Court concludes that the successor-in-interest doctrine does not apply and that Defendants, as non-signatories to the arbitration agreements, cannot compel arbitration under the agreements.

## II.  BACKGROUND

This multi-district litigation consolidates antitrust lawsuits brought by retail grocers against SuperValu and C&S, two of the largest wholesale grocers in the United States.  See Second Consol. Am. Class Action Compl.  [Docket No. 99] ("Second Am. Compl.") ¶ 1.  SuperValu's business is primarily in the Midwest, and C&S's business is largely concentrated in New England.  Id.

Plaintiffs operate retail grocery stores and purchased wholesale grocery products and related services directly from C&S and SuperValu.  Id. ¶¶ 9-10.  Plaintiffs allege Defendants conspired to allocate customers and territories through a September 6, 2003 Asset Exchange Agreement ("AEA") and that Defendants used the allocations to charge retailers supra-competitive prices, all in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  Id. ¶¶ 34-44, 77-83.  Plaintiffs assert their claims as a class action.  See id. ¶¶ 67-75.

**A.  Arbitration Agreements Exchanged Under the AEA**

Under the September 2003 AEA, Defendants exchanged certain business assets, including some supply and arbitration agreements that Defendants had with retail grocers.

Plaintiffs JFM, Inc. and MJF, Inc. (collectively, "Village Market") are retail grocers in New England who had supply and arbitration agreements with SuperValu prior to the AEA.  Riehl Decl., Apr. 25, 2011 [Docket No. 129] Exs. 8, 9.  C&S acquired those agreements from SuperValu in the AEA.  Id. Ex. 5 § 1.3(a), (m).

Plaintiff Millennium Operations, Inc. ("Millennium") (collectively, "Plaintiffs") is a retail grocer in the Midwest who had a supply and arbitration agreement with wholesale grocer Fleming Companies, Inc. ("Fleming") prior to the AEA.  Second Am. Compl. ¶ 9; Riehl Decl. Exs. 2, 3.  Fleming filed for bankruptcy in early 2003, and SuperValu acquired rights to those agreements in the AEA.[2]  Riehl Decl. Ex. 5 § 1.1(a), (m).  Millennium subsequently entered into a new supply agreement and arbitration agreement with SuperValu.  Id. Exs. 6, 7, Second Am. Compl. ¶ 9.

After the AEA, New Village and Millennium each purchased goods from the Defendant with whom they had a supply and arbitration agreement (the "signatory Defendant").  New Village purchased goods from C&S, with whom they had a supply and arbitration agreement, and Millennium purchased goods from SuperValu, with whom they had a supply and arbitration agreement.  King Cole, 707 F.3d at 920.

**B. Village Market and Millennium Each Assert Claims Against Nonsignatory Defendant**

Village Market and Millennium have each asserted an antitrust conspiracy claim against the wholesaler Defendant with whom it does not do business and does not have an arbitration agreement (the "nonsignatory Defendant").  See Second Am. Compl. Count I.  Specifically, Village Market has asserted an antitrust claim against SuperValu only, and Millennium has asserted an antitrust conspiracy claim against C&S only.  Id.

---

[2] The parties disagree as to whether the Fleming's agreements with Millennium were transferred directly from Fleming's bankruptcy estate to SuperValu, as Millennium argues, or whether C&S first acquired those agreements from Fleming's bankruptcy estate and then assigned them to SuperValu.  Regardless of whether C&S ever acquired rights to the agreements with Millennium before transferring those rights to SuperValu, there is no dispute that the agreements were ultimately assigned to SuperValu.

**C. Relevant Procedural History**

In its Partial Motion to Dismiss, Defendants moved to dismiss or stay the claims of Village Market and Millennium, arguing that the doctrines of equitable estoppel or successor-in-interest allowed them to enforce the arbitration agreements to which they were no longer signatories.[3]

This Court granted Defendants' motion to dismiss, finding that the nonsignatory Defendants could compel arbitration under the doctrine of equitable estoppel. In re Wholesale Grocery Prods. Antitrust Litig., No. 09-MD-2090, 2011 WL 9558054, at *3-*4 (D. Minn. July 5, 2011). Because the Court held that equitable estoppel applied, it did not address the Defendants' successor-in-interest argument. See id.

On appeal, the Eighth Circuit Court of Appeals reversed this Court's holding on the issue of equitable estoppel. King Cole, 707 F.3d at 923-24. A majority of the Eighth Circuit panel held that the doctrine of equitable estoppel did not apply because the antitrust conspiracy claims against the nonsignatory Defendants are "statutory claims [that] exist independent of the supply and arbitration agreements." Id. at 923. Thus, the claims against the nonsignatories were not "so intertwined with the agreement containing the arbitration clause that it would be unfair to allow the signatory to rely on the agreement in formulating its claims but disavow availability of the arbitration clause of that same agreement." Id. (quoting PRM Energy Sys., Inc. v. Primenergy,

---

[3] Defendants' Partial Motion to Dismiss also sought dismissal of antitrust conspiracy claims brought by Plaintiffs Blue Goose Market, Inc. ("Blue Goose") and King Cole Foods, Inc. ("King Cole"). Blue Goose and King Cole are retail grocers who have arbitration agreements with SuperValu and have filed antitrust conspiracy claims against C&S only. King Cole, 707 F.3d at 920. The Blue Goose and King Cole arbitration agreements were not exchanged under the AEA. Thus, Defendants sought to enforce those arbitration agreements under the doctrine of equitable estoppel only, and not under a successor-in-interest theory.

L.L.C., 592 F.3d 830, 835 (8th Cir. 2010)).  The Eighth Circuit then remanded the case to this Court for consideration of the nonsignatory Defendants' argument that they can enforce the arbitration agreements as successors-in-interest because those agreements were exchanged as part of the AEA.  Id. at 924-25.

### III.  DISCUSSION

**A.  Successor-in-Interest Argument**

"[S]tate contract law governs the ability of nonsignatories to enforce arbitration provisions."  PRM Energy Sys., 592 F.3d at 833.  Under Minnesota law, the general rule is that "arbitration clauses are contractual and cannot be enforced by persons who are not parties to the contract."  Onvoy, Inc. v. SHAL, LLC, 699 N.W.2d 344, 356 (Minn. 2003).  However, the Minnesota Supreme Court has recognized that there are exceptions to this rule: "Federal cases have set out at least three principles on which a nonsignatory to a contract can compel arbitration:  equitable estoppel, agency, and third-party beneficiary."  Id. (citing MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)).  Minnesota appears to follow federal law regarding these exceptions.  See id.; cf. King Cole, 707 F.3d at 922 (relying on Minnesota Supreme Court's reference to federal law in Onvoy to conclude that "Minnesota appears to follow federal law regarding equitable estoppel").

Defendants argue that the "close relationship" exception, also known as the agency theory,[4] applies here because "SuperValu and C&S are successors-in-interest, standing in each

---

[4] The close relationship doctrine has been referred to as the "agency theory" by the Eighth and Eleventh Circuits.  See PRM Energy Sys., 592 F.3d at 835 (referencing the "close relationship or agency theory recognized in CD Partners"); MS Dealer, 177 F.3d at 948 (stating that the court's finding of equitable estoppel made it unnecessary to determine whether the "agency theory" applied).

other's shoes with respect to the supply and arbitration agreements they exchanged in the AEA." Defs.' Supplemental Mem. [Docket No. 501] 8-9. Defendants contend that permitting Millennium and Village Market to avoid arbitration by pleading their antitrust claims against the assignor, rather than the assignee, of the arbitration agreements would render those agreements meaningless.

The close relationship or agency exception "relies on agency and related principles to allow a nonsignatory to compel arbitration when, as a result of the nonsignatory's close relationship with the signatory, a failure to do so would eviscerate the arbitration agreement." PRM Energy Sys., 592 F.3d at 834 (citing CD Partners, LLC v. Grizzle, 424 F.3d 795, 798 (8th Cir. 2005)); see also MS Dealer, 177 F.3d at 947. For example, in CD Partners, the Eighth Circuit determined that three officers of a corporation could enforce the arbitration clause of a contract between the corporation and the plaintiff, even though the officers were not signatories to the contract. CD Partners, 424 F.3d at 798-800. The Eighth Circuit reasoned that the only way the corporation's promises under the contract could be fulfilled was through the conduct of the corporation's nonsignatory officers and employees. Id. at 800.

Similar to CD Partners, courts applying the close relationship exception have done so only where an agency relationship or corporate affiliation exists between the signatory and nonsignatory to an arbitration agreement. See, e.g., Nesslage v. York Sec., Inc., 823 F.2d 231, 233 (8th Cir. 1987) (allowing nonsignatory who was a "disclosed agent" of signatory to invoke arbitration); Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121 (3d Cir. 1993) (ordering arbitration for signatory's agent and corporate subsidiary); J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-21 (4th Cir. 1988) (holding that claims

against signatory's parent company were subject to arbitration even though the parent company was not a signatory); Letizia v. Prudential Bache Sec., Inc., 802 F.2d 1185, 1188 (9th Cir. 1986) (allowing nonsignatory employees of brokerage firm to enforce firm's arbitration clause).

Here, the relationship between Supervalu and C&S is not based on agency or related principles.  Defendants are competitors; they do not control each other and do not rely on one another to act.  To the extent Defendants have a relationship under the AEA, the relationship is one of assignor and assignee, because each wholesaler assigned to the other their rights to an arbitration agreement.  Thus, Defendants' relationship differs greatly from agency or agency-related relationships that courts have deemed to be sufficiently close for purposes of permitting a nonsignatory to enforce an arbitration agreement.

Defendants' successor-in-interest argument fails for the additional reason that the nonsignatory Defendants are predecessors-in-interest, not successors-in-interest, to the arbitration agreements they seek to enforce.  For example, SuperValu seeks to enforce the Village Market arbitration agreement that it assigned to C&S under the AEA.  As the assignor of the Village Market arbitration agreement, SuperValu is the predecessor-in-interest and C&S is the successor-in-interest to the agreement.  Defendants themselves acknowledge that C&S now stands in SuperValu's shoes with respect to the Village Market arbitration agreement.  Defs.' Supplemental Mem. 8-9.

Defendants cite no authority, and the Court finds none, for the proposition that a predecessor-in-interest's assignment of rights creates a "close relationship" with its assignee that warrants allowing the predecessor-in-interest to assert the rights that it unconditionally assigned and voluntarily relinquished.  Thus, Defendants cannot use a successor-in-interest theory to

enforce arbitration agreements to which they are not signatories.

## B. Direct Enforcement Argument

Defendants also argue they may directly enforce the arbitration agreements to which they are no longer signatories because some of the events giving rise to Millennium and Village Market's claims occurred before the arbitration agreements were transferred. To support this argument, Defendants rely on the principle that a claim may be arbitrable even under a terminated agreement if it involves "facts and occurrences that arose before expiration, . . . or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." Defs.' Supplemental Mem. 6 (quoting Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 205-06 (1991)).

Assuming without deciding that this argument is within the scope of the Eighth Circuit's remand, the argument nevertheless fails. The cases cited by Defendants are inapposite because they concern agreements that were terminated. See, e.g., Litton, 501 U.S. at 193; Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 781 (10th Cir. 1998); Koch v. Compucredit Corp., 543 F.3d 460, 466 (8th Cir. 2008). The issue in those cases was whether a party to an expired arbitration agreement could compel arbitration after the agreement had terminated. See id. Here, the arbitration agreements were assigned, not terminated. Thus, the issue is not whether the right to arbitrate survives, but rather who is entitled to assert that right.

Under Minnesota law, "[a]n assignment generally operates to transfer all rights possessed by the assignor and the assignor retains no interest in the right transferred." Martin ex rel. Hoff v. City of Rochester, 642 N.W.2d 1, 13 (Minn. 2002). Consistent with this principle, where a party assigns agreements that include an arbitration clause, the assignor's "right to compel

arbitration under those agreements 'is extinguished.'"  HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc., 590 F. Supp. 2d 677, 684-85 (D.N.J. 2008) (quoting Restatement (Second) of Contracts § 317(1) (1981)).  Thus, the nonsignatory Defendants are not entitled to assert rights under arbitration agreements that they voluntarily and unconditionally transferred.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants C&S Wholesale Grocers, Inc. and SuperValu Inc.'s Partial Motion to Dismiss or Stay [Docket No. 113] is **DENIED.**

BY THE COURT:


                s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 16, 2015.