# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re:  Wholesale Grocery Products
Antitrust Litigation

**MEMORANDUM OPINION
AND ORDER**
Court File No. 09-MD-2090 ADM/TNL

This Order Relates to All Actions

---

Edward T. Dangel III, Esq., Dangel & Mattchen, LLC, Boston, MA, on behalf of Colella's Super Market, Inc. and Plaintiffs JFM Market, Inc., and MJF Market, Inc.

W. Joseph Bruckner, Esq., Elizabeth R. Odette, Esq., and Kate M. Baxter-Kauf, Esq., Lockridge Grindal Nauen PLLP, Minneapolis, MN; Richard B. Drubel, Esq., and Kimberly H. Schultz, Esq., Boies, Schiller & Flexner LLP, Hanover, NH; Daniel A. Kotchen, Esq., and Daniel L. Low, Esq., Kotchen & Low LLP, Washington, DC; on behalf of Midwest Plaintiffs.

Stephen P. Safranski, Esq., Martin R. Lueck, Esq., K. Craig Wildfang, Esq., Jeffrey S. Gleason, Esq., and Damien A. Riehl, Esq., Robins Kaplan LLP, Minneapolis, MN, on behalf of Defendant SuperValu, Inc.

Todd A. Wind, Esq., and Nicole M. Moen, Esq., Fredrikson & Byron, PA, Minneapolis, MN; and Christopher J. MacAvoy, Esq., and Charles A. Loughlin, Esq., Baker Botts LLP, Washington, DC, on behalf of Defendant C&S Wholesale Grocers, Inc.

---

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge on the Objections by Colella's Super Market, Inc. ("Colella's") [Docket No. 526], Defendant SuperValu, Inc. ("SuperValu") [Docket No. 528], and Defendant C&S Wholesale Grocers, Inc. ("C&S") [Docket No. 529] to Magistrate Judge Tony N. Leung's June 19, 2015 Order ("Order") [Docket No. 524].

For the reasons set forth below, the Objections are overruled and the Order is affirmed.

## II. BACKGROUND[1]

This multi-district litigation consolidates antitrust lawsuits brought by retail grocers against SuperValu and C&S (collectively, "Defendants"), two of the largest wholesale grocers in the United States. <u>See</u> Second Consol. Am. Class Action Compl. [Docket No. 99] ("Second Am. Compl.") ¶ 1. SuperValu's business is primarily in the Midwest, and C&S's business is largely concentrated in New England. <u>Id.</u> Plaintiffs operate retail grocery stores and purchased wholesale grocery products and related services directly from SuperValu and C&S. <u>Id.</u> ¶¶ 9-10. Plaintiffs allege Defendants conspired to allocate customers and territories through a September 6, 2003 Asset Exchange Agreement ("AEA") and that Defendants used the allocations to charge retailers supra-competitive prices, all in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. <u>Id.</u> ¶¶ 34-44, 77-83. Plaintiffs assert their claims as a class action. <u>See id.</u> ¶¶ 67-75.

The Complaint alleges two broad putative classes: (1) retailers who purchased products or related services from Defendants in the Midwest market (the "Midwest Class"); and (2) retailers who purchased such products or services in the New England market (the "New England Class"). <u>See id.</u> ¶ 67. Both classes include a subclass of retailers who were party to an arbitration agreement with a Defendant during the class period (the " Midwest Arbitration Subclass" and the "New England Arbitration Subclass"). <u>Id.</u>

On July 5, 2011, this Court granted Defendants' motion to dismiss Plaintiffs representing the arbitration subclasses (the "Arbitration Plaintiffs"). <u>See In re Wholesale Grocery Prods.</u>

---

[1] The extensive factual and procedural background of this multi-district litigation is more thoroughly discussed in the Order and in the Eighth Circuit's decisions in <u>In re Wholesale Grocery Prods. Antitrust Litig.</u>, 752 F.3d 728 (8th Cir. 2014), cert. denied (June 8, 2015), and <u>King Cole Foods, Inc. v. SuperValu, Inc.</u>, 707 F.3d 917 (8th Cir. 2013).

Antitrust Litig., No. 09-MD-2090, 2011 WL 9558054, at *3-*4 (D. Minn. July 5, 2011) ("July 5, 2011 Order").  Among the Arbitration Plaintiffs dismissed in that Order were New England-based retailers MJF Market, Inc. and JFM Market, Inc. (collectively, "Village Market"), who had arbitration agreements with C&S.  See id.  The Arbitration Plaintiffs appealed the July 5, 2011 Order to the Eighth Circuit.

On October 31, 2011, while that appeal was pending, Plaintiffs moved to certify a Midwest Class represented by Plaintiff D&G Inc. ("D&G"), and a New England Class represented by Plaintiff DeLuca's Corporation ("DeLuca's").  See Pls.' Mot. Class Cert. [Docket No. 202] 1-3.  The arbitration subclasses were excluded from the Midwest and New England Classes that Plaintiffs sought to certify.  Id. at 2.  However, the exclusion of the arbitration subclasses was  "conditioned upon the Court's July 5, 2011 Order . . . dismissing claims by the Arbitration Plaintiffs which [was] currently on appeal."  Pls.' Reply Supp. Mot. Class Cert. [Docket No. 244] 18 n.4.  Plaintiffs explained that "[i]f the Eighth Circuit should overturn that order, Plaintiffs [would] promptly move to amend their Class definitions to include these purchasers in appropriate arbitration subclasses."  Id.; see also Pls.' Reply Supp. Rule 54(b) Mot. [Docket No. 171] 6 (stating if Arbitration Plaintiffs succeeded on appeal, "Arbitration Plaintiffs and the retailers with arbitration agreements they seek to represent could rejoin the Class any time before trial").

This Court denied class certification of both proposed classes on July 16, 2012, after finding that Plaintiffs could not show class-wide impact through common evidence.  See In re Wholesale Grocery Prods. Antitrust Litig., No. 09-MD-2090, 2012 WL 3031085 (D. Minn. July 25, 2012)  ("Class Certification Order").  The Court wrote that the "formulaic nature" of the

pricing method used by SuperValu to charge customers in the Midwest market, known as "activity based sell" ("ABS") pricing, made a better case for certification of the Midwest Class than the New England Class.  Id. at *16.  Nevertheless, the Midwest Class could not prove impact by common evidence because each of SuperValu's distribution centers across the Midwest inserted different values into the ABS formula, requiring an analysis of each distribution center's fees and competitive conditions.  Id.

On August 31, 2012, D&G requested leave to move for certification of a narrower Midwest class of grocers who were charged using ABS pricing and supplied by SuperValu's Champaign, Illinois distribution center.  See Letter, Aug. 31, 2012 [Docket No. 362] ("August 2012 Letter").  D&G argued that the distribution-center based class would "entirely avoid[] the problems created by different ABS formulas for different distribution centers."  Id. at 1. DeLuca's made no request for a narrower New England class.

On January 11, 2013, the Court granted summary judgment to Defendants.  In re Wholesale Grocery Prods. Antitrust Litig., No. 09-MD-2090, 2013 WL 140285 (D. Minn. Jan. 11, 2013).  Based on the grant of summary judgment to Defendants, the Court denied D&G's request for renewed class certification of the narrower Midwest Class as moot.  Id. at *15.  D&G appealed both the summary judgment ruling and the denial of Midwest class certification. Notice of Appeal [Docket No. 429].  DeLuca's did not appeal.

On February 13, 2013, while the summary judgment and Midwest Class certification appeal was pending, the Eighth Circuit reversed the dismissal of the Arbitration Plaintiffs' claims and remanded with instructions to consider whether certain Arbitration Plaintiffs' arbitration agreements, including Village Market's agreement, were enforceable under a

"successor-in-interest" theory. <u>King Cole Foods, Inc. v. SuperValu, Inc.</u>, 707 F.3d 917 (8th Cir. 2013). On remand, this Court ruled that arbitration is not compelled under a successor-in-interest theory. <u>See</u> <u>In re Wholesale Grocery Prods. Antitrust Litig.</u>, No. 09-MD-2090, 2015 WL 1191826 (D. Minn. March 16, 2015). This ruling is currently on appeal to the Eighth Circuit. Notice of Appeal [Docket No. 517].

On May 21, 2014, the Eighth Circuit affirmed the denial of certification of the Midwest Class, but reversed the grant of summary judgment against D&G. <u>In re Wholesale Grocery Prods. Antitrust Litig.</u>, 752 F.3d 728 (8th Cir. 2014), <u>cert. denied</u> 135 S.Ct. 2805 (2015). Additionally, the Eighth Circuit vacated the denial of D&G's request for leave to pursue certification of a narrower class of SuperValu customers in the Midwest who were supplied by the Champaign, Illinois distribution center and charged using the ABS pricing formula. <u>Id.</u> at 736. The Eighth Circuit stated that "the evidence suggests the ABS fee inputs would be standardized for this narrow class," and this Court should "consider, in light of our holding that the wholesalers are not entitled to summary judgment, whether to certify this class." <u>Id.</u> Because there had been no appeal by DeLuca's, the Eighth Circuit did not address any claims related to the proposed New England class.

After the mandate [Docket No. 483] was entered on the May 2014 decision, a new putative class action lawsuit was filed on September 29, 2014 by Elkhorn-Lueptows, Inc., Jefferson Lueptows, Inc., and East Troy Lueptows, Inc. (collectively, "Lueptows") and Nemecek Markets, Inc. ("Nemecek") (together with Lueptows, the "<u>Elkhorn-Lueptows</u> Plaintiffs"). The complaint in the new action is substantially similar to the Second Amended Complaint. <u>See</u> Compl., <u>Elkhorn-Lueptows, Inc. v. C&S Wholesale Grocers</u>, 14-4031 (ADM/TNL) [<u>Elkhorn-</u>

Lueptows Docket No. 1]. The Elkhorn-Lueptows Plaintiffs are Wisconsin grocers who are parties to arbitration agreements with SuperValu. Nemecek purports to represent a class of SuperValu customers supplied from the Green Bay, Wisconsin distribution center, and Lueptows purports to represent a class of SuperValu customers supplied from the Pleasant Prairie, Wisconsin distribution center. Id. ¶ 57. Plaintiffs seek to treat the Elkhorn-Lueptows matter as a later-filed, tag-along action to this matter, which would allow it to join this MDL litigation. See J.P.M.L. R. 1.1(h).

In October 2014, Colella's, a New England-based retailer, filed a Motion to Intervene [Docket No. 489] for the purposes of seeking certification of a revised class of "Boston area" grocers with 15 or fewer stores.

In the wake of the Eighth Circuit's mandate and the subsequent filings by the Elkhorn-Lueptows Plaintiffs and Colella's, Judge Leung entered a Case Management Order [Docket No. 498] establishing a briefing schedule and plan for allowing the case to move forward.[2] On June 19, 2015, Judge Leung made the following pre-trial rulings:

1. Plaintiff D&G will be allowed to seek certification of a narrower, distribution-center-based class;

2. The Elkhorn-Lueptows Complaint, File No. 14-cv-4031, shall be treated as a later-filed, tag-along action, and the Elkhorn-Lueptows Plaintiffs shall be allowed to seek certification of narrower, distribution-center-based classes; [and]

3. Colella's Motion to Intervene is DENIED.

_____

[2] The age of this matter and the severability of cases under the MDL umbrella require the case proceed before the district court although an appeal of the successor-in-interest remains pending.

Order at 27. SuperValu, C&S, and Colella's have all filed Objections to Judge Leung's Order. The Objections are addressed below.

## III. DISCUSSION

### A. Standard of Review

A magistrate judge's order on a nondispositive pretrial matter will not be set aside unless it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Chakales v. Comm'r of Internal Revenue, 79 F.3d 726, 728 (8th Cir.1996). "A decision is 'contrary to the law' when it 'fails to apply or misapplies relevant statutes, case law or rules of procedure.'" Knutson v. Blue Cross & Blue Shield of Minn., 254 F.R.D. 553, 556 (D. Minn. 2008) (quoting Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co., 592 F. Supp. 2d 1087, 1093 (N.D. Iowa 2008)).

A magistrate judge's recommended disposition of a pretrial matter that is dispositive of a claim or defense is reviewed by the district judge "de novo as to any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

### B. SuperValu's Objection

SuperValu argues that the Order was clearly erroneous or contrary to law because it did not directly address and decide whether the New England Plaintiffs will be permitted to pursue a potential certification of a narrower class. SuperValu contends that although Judge Leung expressly allowed the Midwest Plaintiffs to seek certification of narrower, distribution-center based classes, he did not directly address the propriety of reopening class certification

proceedings for the New England Plaintiffs.  SuperValu argues that the New England Plaintiffs should not be allowed to pursue narrower certification of a New England Class because this Court's ruling denying class certification was not appealed by any named New England Plaintiff.

Colella's and Village Market have filed a Response [Docket No. 532] to SuperValu's Objection, arguing that denial of certification of a New England Class was not binding on Village Market, a New England Arbitration Plaintiff, because Village Market had been dismissed along with the other Arbitration Plaintiffs before the class certification argument. Colella's and Village Market also argue that DeLuca's failure to appeal this Court's denial of class certification for a New England class does not preclude the New England Plaintiffs from seeking to certify a narrower class of Boston area grocers because the denial of class certification was an interlocutory ruling and D&G, the representative of the proposed Midwest Class, adequately represented all Plaintiffs' interests when it appealed that ruling.

The Court finds that Judge Leung sufficiently and correctly determined that the New England Plaintiffs may not relitigate certification for a New England Class.  The Order clearly stated that denial of class certification in New England was "unappealled, unaddressed, and, therefore, undisturbed."  Order at 26.  This Court agrees that "[t]o allow Colella's to attempt to represent a putative New England class and seek class certification now—despite the fact that certification for a New England class was sought and denied in this matter once already in this case—would give New England Plaintiffs an unwarranted second bite at the class-certification apple."  Id. at 24.  Moreover, this Court's Class Certification Order denying certification of the New England Class foreclosed the New England Plaintiffs from pursuing a narrower class.  In denying certification of the New England Class, the formulaic ABS pricing used by SuperValu

to charge retailers in the Midwest was distinguished from the pricing scheme used by C&S in New England. The New England pricing was the result of individual negotiations driven by a number of customer-specific factors, including the size and frequency of orders, transportation costs, local competition, and individual business strategies. Class Certification Order, 2012 WL 3031085, at *10. Thus, the argument by any New England Plaintiff to revisit the unappealed issue of certification of a narrower New England Class is rejected.

This conclusion is not altered by the New England Arbitration Plaintiffs' dismissal from the case prior to the class-certification motion. The only distinction between members of the arbitration subclass and the broader class is their arbitration agreements with Defendants; in all other respects, they belong under the umbrella of the New England Class. The Arbitration Subclass Plaintiffs do not contend that this distinction would have caused them to argue the class certification motions any differently than Plaintiffs for the broader New England Class did. Indeed, when moving to certify the broader classes, Plaintiffs' position was that the Court's decision should apply to the arbitration subclasses, and that the certification issues would not need to be relitigated if members of the arbitration subclasses were permitted to rejoin the case following appeal. See Pls.' Reply Supp. Mot. Class Cert. 18 n.4. To this end, Plaintiffs expressly stated that the exclusion of the arbitration subclasses from the broader classes was "conditioned upon the Court's July 5, 2011 Order," which has now been overturned. Id. Additionally, although the Arbitration Plaintiffs had been dismissed before the class certification proceedings, their potential future claims were protected by rights continued to be protected by lead counsel of their broad class. During the class certification proceedings, lead counsel advocated directly on the Arbitration Plaintiffs' behalf by arguing that the arbitration subclasses

were only conditionally excluded from the proposed classes and could rejoin the broader classes if this Court's July 5, 2011 Order were overturned.  Therefore, the Arbitration Plaintiffs' dismissal from the case during the time that certification of a New England class was sought and denied is not a sufficient basis for once again litigating certification of a New England class.[3]

Also without merit is Colella's and Village Market's argument that Midwest Plaintiff D&G represented the New England Plaintiffs' interests when it appealed this Court's denial of class certification.  To the contrary, D&G's arguments on appeal were limited to D&G and the Midwest market; it did not address the New England Plaintiffs.  <u>See generally</u> Appellant's Br., <u>D&G, Inc. v. SuperValu, Inc.</u>, No. 13-1297 (8th Cir.) [Appellate Docket Entry Dated Apr. 17, 2013].  Moreover, Plaintiffs have never alleged a single, unified class in which they are all members.  Rather, the Plaintiffs' Complaint alleges two broad classes—a New England Class and a Midwest Class—with DeLuca's being in the New England Class and D&G being in the Midwest Class.  <u>See</u> Second Am. Compl. ¶¶ 67, 71.

Accordingly, the denial of a New England Class was not appealed and is final, and the New England Plaintiffs are not permitted to pursue class certification of a narrower New England Class.

## C.  C&S's Objection

### 1.  Statute of Limitations

C&S objects to Judge Leung's determination that the claims asserted in the <u>Elkhorn-Lueptows</u> Complaint filed on September 29, 2014 are not barred by the statute of limitations.

---

[3] This ruling does not contradict <u>Smith v. Bayer Corp.</u>, 131 S.Ct. 2368 (2011), in which the Supreme Court held that the denial of class certification is not binding on unnamed members of a proposed but uncertified class.  The Arbitration Plaintiffs were named plaintiffs whose rights were being directly protected and advocated for throughout this litigation.

The Court reviews this ruling de novo because it is dispositive of C&S's statute of limitations defense. See Fed. R. Civ. P. 72(b)(1), (3).

### a. Individual Claims

C&S first contends that Judge Leung's Order erroneously determined that the class action tolling doctrine protected Nemecek and Lueptows' individual claims from the four-year statute of limitations set forth in the Clayton Act, 15 U.S.C. § 15b. Under the class action tolling doctrine established in Am. Pipe & Constr. Co. v. Utah, the applicable statute of limitations is tolled during the pendency of a class action for all members of the putative class. 414 U.S. 538, 554 (1974). "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 354 (1983).

Judge Leung determined that tolling began for Nemecek and Lueptows' claims at the time D&G commenced this putative action in December 2008, and ended "[o]nce the Eighth Circuit directed the District Court to consider whether to certify a narrower [Midwest] class." Order at 16. At that time, Nemecek and Lueptows "were on notice that (1) their claims were no longer being protected in the class action, and (2) that the narrower class certification issue remanded to the District Court remained an open question." Id.

C&S argues Plaintiffs' motion for class certification, filed on October 31, 2011, expressly excluded retailers with arbitration agreements from the Midwest Class. Since Nemecek and Lueptows were members of the arbitration subclass, C&S argues that tolling for Nemecek and Lueptows ended on October 31, 2011, the date the class certification motion put

11

them on notice that the Midwest Class was no longer protecting their rights. This argument lacks merit because, for the same reasons discussed above in the context of the New England Arbitration Subclass, the rights of the arbitration subclass continued to be protected by the broader class during class certification. Therefore, Judge Leung correctly concluded that the American Pipe tolling doctrine protected Nemecek and Lueptows' individual claims from the statute of limitations.

### b. Class Claims

C&S also argues that the Judge Leung's Order wrongly determined that American Pipe tolling applied to Nemecek and Lueptows' class claims brought on behalf of retailers serviced by the Green Bay and Pleasant Prairie distribution centers. C&S contends class certification was finally determined when this Court denied certification of the New England and Midwest Classes, and thus tolling ended at that time.

American Pipe tolling applies to subsequent class actions when a definitive ruling on class certification was not made in the earlier class action. See In re Vertrue Inc. Mktg. and Sales Practices Litig., 719 F.3d 474, 479-80 (6th Cir. 2013). The rationale for permitting class claims to be tolled in such situations is that where no final class-certification has been made, there is no risk that plaintiffs will file "repetitive and indefinite class action lawsuits addressing the same claims." Id.

C&S relies on Andrews v. Orr, 851 F.2d 146 (6th Cir. 1988), to argue that tolling ended for Nemecek and Lueptows' class claims when this Court denied certification of the New England and Midwest Classes. In Andrews, a second class action was filed after an earlier class action had been dismissed. Id. at 148. In the first action, certification of a nationwide class had

been denied, and the named plaintiff moved to certify a narrower class. Id. While the motion to certify a narrower class was pending, the named plaintiff settled her individual claim and the case was dismissed. Id. Although the motion to certify a narrower class was never decided in the earlier case, the Sixth Circuit held that the first class action did not toll the class claims of the plaintiffs in the second class action. Id. at 149. This holding was based on the concern that applying the American Pipe tolling rule would allow plaintiffs to reargue the issue of class certification by filing new but repetitive class action lawsuits . Id. at 149.

Andrews is procedurally different from this case. In Andrews, the issues of class certification were no longer being litigated in the first action, as that action was dismissed. Here, litigation on the issue of class certification for a narrower Midwest Class remains pending as a result of the Eighth Circuit's order: (1) reversing the dismissal of D&G, (2) vacating the denial of D&G's request to certify a narrower request, and (3) requesting this Court to consider whether to certify a narrower, distribution-center based Midwest class. No final determination has been made on the pending class certification issue. Moreover, allowing the Elkhorn-Lueptows Plaintiffs to assert their class claims will not result in repetitive and endless attempts at class certification, because Nemecek and Lueptows seek to certify the same type of distribution-center based Midwest classes that this Court is considering at the direction of the Eighth Circuit.

Therefore, the Order correctly determined that American Pipe tolling applied to Nemecek and Lueptow's class claims.

## 2. Renewed Midwest Class Proceedings

C&S also objects to Judge Leung's ruling that D&G and the Elkhorn–Lueptows Plaintiffs may seek certification of narrower, distribution-center-based classes. C&S contends that when

the Eighth Circuit vacated this Court's denial of D&G's request to reopen Midwest Class

certification, it did not require this Court to consider D&G's distribution-center-based class.

Thus, argues C&S, this Court maintains discretion over whether to reconsider class certification,

which C&S contends is not warranted because the Midwest Plaintiffs have not shown materially

changed circumstances based on newly discovered facts.

In vacating this Court's denial of D&G's request to reconsider class certification, the

Eighth Circuit stated:

> We do vacate the denial of D & G's request to certify a narrower class of SuperValu customers who were charged according to the ABS formula and supplied from Champaign, Illinois. Although the evidence suggests the ABS fee inputs would be standardized for this narrow class, at this stage we decline to opine whether "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). We merely request the district court to consider, in light of our holding that the wholesalers are not entitled to summary judgment, whether to certify this class.

D&G, 752 F.3d at 736.

As Judge Leung correctly recognized, the Eighth Circuit requested this Court to consider

whether to certify this narrower class, not whether to allow Plaintiffs to move for certification.

Order at 11. Thus, the Order properly allows D&G to seek certification of a narrower class.

Additionally, the Court agrees with Judge Leung that the Elkhorn-Lueptows Plaintiffs must also

be permitted to seek certification of a narrower class because "it would be inequitable to allow

one member of a class that was denied certification to seek to certify a narrower class, but to

refuse to allow other members of the larger purported class to seek to certify similarly narrower

classes to which they belong." Order at 17.

**D. Colella's Objection**

Colella's objects to Judge Leung's denial of its Motion to Intervene as a Party Plaintiff [Docket No. 489]. A motion to intervene is a nondispositive matter. D. Minn. L.R. 7.1(b)(4)(A)(iv). Thus, the ruling on Colella's Motion will be upheld unless it was "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

Colella's argues that their motion to intervene was erroneously found to be untimely. The timeliness of a motion to intervene is a "threshold issue." United States v. Ritchie Special Credit Invs., Ltd., 620 F.3d 824, 832 (8th Cir. 2010). In concluding that Colella's request to intervene was untimely, the following four factors were considered: "(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective interven[o]r's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties." Order at 18-19 (quoting ACLU of Minn. v. Tarek ibn Ziyad Academy, 643 F.3d 1088, 1094 (8th Cir. 2011)).

With respect to the first factor, Colella's argues that, although it has not been involved in this case until now, the New England Plaintiffs have, and thus Defendants would not be prejudiced by Colella's intervention. Judge Leung determined that in light of the substantial motion practice and extensive discovery that have occurred, "Defendants would be prejudiced by the addition of plaintiffs who did not appeal either the denial of the New England class or the grant of summary judgment, and who have never been a part of this five-year-old litigation." Order at 20. The Court agrees; allowing Colella's to intervene and request certification of a narrower New England class would require Defendants to relitigate class certification and summary judgment issues that were not appealed by the New England Plaintiffs and are now

settled issues. Thus, the Defendants would be prejudiced if Colella's were permitted to intervene at this stage of the litigation.

With respect to the second factor, the prospective intervenor's knowledge of the litigation, Colella's counsel has participated in this case since its inception, having served as counsel for DeLuca's. Nevertheless, Colella's attorney states that he did not know that the Midwest representative, D&G, would not be serving as class plaintiff for all retailers until after the Eighth Circuit's reversal of the summary judgment order in the spring of 2014. This argument fails for at least two reasons. First, as discussed earlier, the Complaint divides Plaintiffs into two broad classes of retailers—the New England Class and the Midwest Class—and Midwest Plaintiff D&G has never purported to represent the interests of the New England Class. Second, to the unlikely extent that there was ever any question about whether D&G was representing all retailers or just those in the Midwest, that question was clearly answered in August 2012, when D&G requested permission to seek certification of a narrower class of Midwest retailers who were charged according to SuperValu's ABS formula and serviced from an Illinois distribution center. See August 31, 2012 Letter. At that time there was absolutely no doubt that D&G was not serving as class plaintiff for retailers in New England.

In addressing the third factor, Colella's argues its reason for the delay in seeking intervention was that it could not intervene from February 2013 to August 26, 2014 because this case was on appeal to the Eighth Circuit, which deprived this Court of jurisdiction to consider intervention or new actions. Colella's Obj. 5, 7-8. However, Colella's fails to provide a convincing reason for not intervening before February 2013.

The fourth factor, whether the delay in seeking intervention may prejudice the existing

parties, also disfavors intervention. As stated earlier, Judge Leung correctly recognized that Defendants would be unduly prejudiced by relitigating certification of a putative New England class when this Court's denial of a New England class "remained unappealed, unaddressed, and, therefore, undisturbed." Order at 26. Denial of Colella's motion to intervene as untimely is not clearly erroneous or contrary to law.

Colella's also objects to Judge Leung's conclusions that even if Colella's had timely moved to intervene, it is not entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a), nor is it entitled to permissive intervention under Federal Rule of Civil Procedure 24(b). After carefully reviewing Colella's objections, the Court finds these conclusions are neither clearly erroneous nor contrary to law.

### IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      The Objections by Colella's Super Market, Inc. [Docket No. 526], Defendant SuperValu, Inc. [Docket No. 528], and Defendant C&S Wholesale Grocers, Inc. [Docket No. 529] to Magistrate Judge Tony N. Leung's June 19, 2015 Order are **OVERRULED**; and

2.      The June 19, 2015 Order [Docket No. 524] is AFFIRMED.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 20, 2015.