**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re Wholesale Grocery Products<br>Antitrust Litigation<br><br>This Order Relates to All Actions | **MEMORANDUM OPINION**<br>**AND ORDER**<br>Court File No. 09-MD-2090 ADM/TNL |

Elizabeth R. Odette, Esq., W. Joseph Bruckner, Esq., and Kate M. Baxter-Kauf, Esq., Lockridge Grindal Nauen PLLP, Minneapolis, MN, on behalf of the Midwest Plaintiffs.

Stephen P. Safranski, Esq., and Natalie I. Uhlemann, Esq., Robins Kaplan LLP, Minneapolis, MN, on behalf of Defendant SuperValu, Inc.

Eric S. Hochstadt, Esq., Weil, Gotshal & Manges LLP, New York, NY, and Todd A. Wind, Esq., Fredrikson & Byron, PA, Minneapolis, MN, on behalf of Defendant C&S Wholesale Grocers, Inc.

## I. INTRODUCTION

On January 25, 2017, the undersigned United States District Judge heard oral argument on Plaintiffs' Motion for Approval of the Form of Class Notice and Plan of Notice [Docket No. 684] and Defendant SuperValu, Inc.'s ("SuperValu") Motion for Approval of Limited Customer Communications Program [Docket No. 688]. For the reasons set forth below, Plaintiffs' Motion is granted in part and SuperValu's Motion is granted in part.

## II.  BACKGROUND[1]

This multi-district class action litigation consolidates the antitrust lawsuits of retail grocers against SuperValu and C&S Wholesale Grocers, Inc. ("C&S") (collectively, "Defendants"), the two largest full-line grocery wholesalers in the United States. See Second Consol. Am. Class Action Compl. [Docket No. 99] ("Second Am. Compl.") ¶ 1. Plaintiffs allege that in 2003, Defendants conspired to allocate customers and territories through an Asset Exchange Agreement ("AEA"), and that, as a result of the reallocation, Defendants charged retailers supra-competitive prices, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. See id. ¶¶ 34–44, 77–83.

On September 7, 2016, the Court certified the following five litigation classes ("Classes") of customers served from SuperValu's distribution centers in the Midwest:

> **The Champaign DC Non-Arbitration Class:** All customers that paid ABS fees on wholesale grocery products in all four SuperValu ABS product categories (grocery, dairy, frozen, and general merchandise/health and beauty care) purchased directly from SuperValu's Champaign, Illinois DC from December 31, 2004 through September 13, 2008 (the "Class Period"), are located in the relevant geographic market, and did not have an arbitration agreement with SuperValu during the Class Period. This class brings claims against both Defendants;

---

[1] The full factual and procedural background is set forth in previous decisions by this Court and the Eighth Circuit and is incorporated by reference. See In re Wholesale Grocery Prods. Antitrust Litig., 752 F.3d 728 (8th Cir. 2014), cert. denied (June 8, 2015); In re Wholesale Grocery Prods. Antitrust Litig., 707 F.3d 917 (8th Cir. 2013); In re Wholesale Grocery Prods. Antitrust Litig., 2016 WL 4697338 (D. Minn. Sept. 9, 2016); In re Wholesale Grocery Prods. Antitrust Litig., 2015 WL 4992363 (D. Minn. Aug. 20, 2015); In re Wholesale Grocery Prods. Antitrust Litig., 97 F. Supp. 3d 1101 (D. Minn. 2015); In re Wholesale Grocery Prods. Antitrust Litig., 2012 WL 3031085, at *1-4 (D. Minn. July 25, 2012); In re Wholesale Grocery Prods. Antitrust Litig., 722 F. Supp. 2d 1079 (D. Minn. 2010).

**The Champaign DC Arbitration Class:** All customers that paid ABS fees on wholesale grocery products in all four SuperValu ABS product categories (grocery, dairy, frozen, and general merchandise/health and beauty care) purchased directly from SuperValu's Champaign, Illinois DC from December 31, 2004 through September 13, 2008, are located in the relevant geographic market, and had an arbitration agreement with SuperValu during the Class Period. This class brings claims against C&S only;

**The Green Bay DC Class:** All customers that paid ABS fees on wholesale grocery products in all four SuperValu ABS product categories (grocery, dairy, frozen, and general merchandise/health and beauty care) purchased directly from SuperValu's Green Bay, Wisconsin DC from December 31, 2004 through September 13, 2008, and are located in the relevant geographic market. This class brings claims against C&S only;

**The Hopkins DC Class:** All customers that paid ABS fees on wholesale grocery products in all four SuperValu ABS product categories (grocery, dairy, frozen, and general merchandise/health and beauty care) purchased directly from SuperValu's Hopkins, Minnesota DC from December 31, 2004 through September 13, 2008, and are located in the relevant geographic market. This class brings claims against C&S only; and

**The Pleasant Prairie DC Class:** All customers that paid ABS fees on wholesale grocery products in all four SuperValu ABS product categories (grocery, dairy, frozen, and general merchandise/health and beauty care) purchased directly from SuperValu's Pleasant Prairie, Wisconsin DC from December 31, 2004 through September 13, 2008, and are located in the relevant geographic market. This class brings claims against C&S only.[2]

---

[2] Excluded from each of the five Classes are:
- the Court and its officers, employees, and relatives;
- Defendants and their parents, subsidiaries, affiliates, shareholders, employees, and co-conspirators;
- government entities;
- any customer of either Defendant who, prior to C&S and SuperValu's September 6, 2003 AEA, entered into a contract with either Defendant that established the prices (including upcharges) the customer would pay for wholesale grocery products and related services throughout the entire Class Period and who did not amend

Am. Redacted Mem. Op. & Order [Docket No. 651] at 31–33; In re Wholesale Grocery Prods. Antitrust Litig., No. 09-2090, 2016 WL 4697338, at *14–15 (D. Minn. Sept. 9, 2016).

Plaintiffs now move for approval of their proposed notice program. Defendants move for approval of a limited customer communications program.

### III.  DISCUSSION

**A.  Notice Program**

Plaintiffs propose a notice program that consists of: (1) direct mailing of a long-form notice to all class members who can be reasonably identified; (2) supplemental publication of a short-form notice in four regional trade publications and a PR1 Newswire release; and (3) the creation of a case-specific website and toll-free phone number.

The parties have reached agreement on the language that will be included in the long-form notice, the content of the case-specific website, and the script for the toll-free number. However, three areas of dispute remain. First, Defendants oppose supplemental publication, arguing it is unnecessary overkill and may cause confusion among SuperValu customers who do not fall within any Class but may believe their rights are impacted by the litigation. Second, Plaintiffs oppose Defendants' request to include a brightly colored opt-out form and postage-paid return envelope with the long-form notice. Plaintiffs argue that an opt-out form may be confusing or coercive. Third, Plaintiffs oppose Defendants' request that the case-specific website provide class members with the ability to opt out online. Plaintiffs argue that this form

---

    or renegotiate the prices set in such contract during the Class Period; and
- Tops Friendly Markets, LLC and The Great Atlantic & Pacific Tea Company, Inc. (also known as A&P).

of opting out is unnecessary and may cause some class members to unintentionally opt out of a Class.

### 1. Legal Standard

Notice of the pendency of a class action must satisfy the requirements of Federal Rule of Civil Procedure 23(c) as well as due process. Rule 23(c)(2)(B) provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition,

> [t]he notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Id.

To satisfy due process, the notice given must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Grunin v. Int'l House of Pancakes, 513 F.2d 114, 120

(8th Cir. 1975) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). Neither Rule 23 nor due process require that all class members receive actual notice by mail or other means. Rather, "individual notice must be provided to those class members who are identifiable through reasonable effort." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 175 (1974). When a class member's name and address is known or easily ascertainable, individualized notice by mail is the "best notice practicable." Id.; Manual for Complex Litigation (Fourth) § 21.311 (2016) at 287 ("When the names and addresses of most class members are known, notice by mail is usually preferred.") (footnote omitted)). The court has discretion over the mechanics of the notice process, "subject only to the broad 'reasonableness' standards imposed by due process." Grunin, 513 F.2d at 121.

### 2. Publication Notice

Plaintiffs' proposed notice program includes sending a long-form notice by first class mail to class members whose addresses are known, and publishing a short-form notice in four regionally circulated trade publications to reach those class members who do not receive a mailed notice. Plaintiffs assert that notice by publication is necessary because the class period spans from 2004 to 2008, and subsequent to this period some class members have sold their retail grocery stores. In the instance of a new owner, it cannot be determined based on public record who may have retained the claim to the lawsuit in the transfer of assets. Plaintiffs thus contend that, although discovery has disclosed current or alternate addresses for most of the 321 class members, publication is nevertheless required because some class members might not be identified and notified through the direct notice mailing.

Defendants argue publication is not necessary because the overwhelming majority of

class members' addresses are known or ascertainable. According to the class notice administrator retained by Class counsel, current addresses have been confirmed for all but 17 of the 321 class members. Keough Decl. [Docket No. 691] ¶ 7. Moreover, the class notice administrator has not yet exhausted its effort to "employ sophisticated advanced search methods in attempt [sic] to update and complete the mailing list where addresses are not currently available." Id. ¶ 9. Defendants thus contend that due process does not require publishing notice to tens of thousands of readers to reach a handful of class members. Defendants additionally argue that publication notice is likely to confuse SuperValu customers who do not meet the highly technical class definitions and may falsely believe their rights are impacted by this litigation.

Where individualized notice by mail will reach a large majority of class members, supplemental notice by publication is not required. See, e.g., Grunin, 513 F.2d at 121–22. Grunin was an antitrust action by franchisees against their franchisor. Id. at 118. Approximately one third of the class, or 100 class members, could not be reached by mail. Id. at 121–22. The Eighth Circuit held that "notice by publication was unnecessary in this case for due process purposes and probably would have been of little value in alerting members of the class and subclass that were previously uninformed." Id. at 121; see also Minter v. Wells Fargo Bank, N.A., 283 F.R.D. 268, 276 (D. Md. 2012) (denying request for publication notice where court was "confident that individual mailing will be sufficient to provide notice to the vast majority of potential class members"); Lamb v. United Sec. Life Co., 59 F.R.D. 25, 42 (S.D. Iowa 1972) ("If there are few or none [unidentified class members], no publication notice will be necessary.").

Like Grunin, this class action involves a limited number of class members (as opposed to

7

a consumer class action involving millions of class members), and a very large majority of the class members will be reached by mail. After the class notice administrator has finished implementing its advanced search methods to complete the mailing list, only a few, if any class members will have unconfirmed contact information. Therefore, publication in multiple regional trade journals and a newswire press release is not required by due process and will be of little value in alerting the small number of remaining class members who might not be reached by mail. Accordingly, the notice program will not include a supplemental publication component.

### 3. Opt-Out Form, Ability to Opt Out Online

Defendants contend an opt-out form should be included with the mailed notice so that no hurdles are imposed to opting out. Defendants request that the opt-out forms be printed on colored paper and include a postage paid return envelope. Additionally, Defendants argue that the case-specific website should provide class members with the ability to opt out online.

Plaintiffs oppose both of Defendants' proposed methods for opting out, arguing that they have the potential to confuse class members and may cause them to inadvertently opt out of the class. Plaintiffs further argue that it is not necessary to provide class members with these methods of opting out because class members may opt out by letter following the instructions provided in the long-form notice.

The Federal Judicial Center's Manual for Complex Litigation advises that a "simple and clear form for opting out is often included with the [class action] notice." Manual for Complex Litigation (Fourth) § 21.311 (2016). The use of an opt-out form on paper and online to simplify the opt-out process is appropriate here, where no action is required for a class member to be included in the class. With respect to Plaintiffs' concern that an opt-out form will engender

confusion, the Court agrees with the Potash case from this district, which found "nothing generically confusing in the utilization of an exclusion form to facilitate a potential class members election to opt-out of a class." In re Potash Antitrust Litig., 161 F.R.D. 411, 413 (D. Minn. 1995). Moreover, the class members here are businesses, and their owners possess the level of sophistication necessary to read and understand a simple and clear opt-out form. Thus, the use of an opt-out form under these circumstances "does no more than assure that those who wish to opt-out may do so with somewhat of the same ease by which they may opt-in." Id. at 413 n.3.[3] For these reasons, Plaintiffs shall include an opt-out form and postage paid return envelope with the long-form notice mailed to class members. The opt-out form should be printed on the same color of paper as the long-form notice to ensure that class members do not perceive the form as having a greater or lesser importance than the long-form notice.

Courts also approve the use of online forms which allow class members to opt out electronically. See, e.g., Spann v. J.C. Penney Corp., 314 F.R.D. 312, 331 (C.D. Cal. 2016) (approving class settlement notice plan which "provides that class members may elect to exclude themselves by completing and submitting online or mailing a simple Opt-Out Form, which will be available by phone and on the settlement website"). For the same reasons that a paper opt-out form is appropriate, the Court will also order that the case-specific website include an online opt-out form that can be completed and submitted electronically.

---

[3] Plaintiffs also argue that because many class members depend upon Defendants as their wholesale suppliers, inclusion of an opt-out form may constitute a coercive solicitation to opt out. This argument lacks merit. The long-form notice expressly informs class members that their decision to remain in or exclude themselves from the litigation "will not affect Supervalu or C&S's business relationship with you in any way." Long-Form Notice ¶ 13.

**B. SuperValu's Motion**

Defendants seek permission to send a letter to its customers shortly after class notice has been issued. SuperValu anticipates getting a number of questions from its customers after they receive the class notice, and this letter may minimize customer confusion and enable SuperValu to maintain its customer relationships. SuperValu further contends that some class members have already been solicited by a claims processing entity called Lex Group, and that this contact caused confusion that could be resolved by a letter from SuperValu to its customers. SuperValu also requests approval of a telephone script to be used by a designated SuperValu businessperson for responding to telephone inquiries from its customers.

Plaintiffs oppose Defendants' request, arguing that the proposed letter allows SuperValu to reiterate and expand its defenses, and the telephone script undermines Class members' rights and ability to receive information about the lawsuit from class counsel. Plaintiffs also contend that to the extent that SuperValu's proposed letter echoes the Court-approved notice, it is unnecessary. Additionally, Plaintiffs argue that if confusing third-party communications occur in the future, SuperValu and Plaintiffs' counsel can negotiate SuperValu's response, similar to how the Lex Group incident was handled. Plaintiffs further argue that the telephone script is unnecessary because if SuperValu receives questions about the lawsuit from its customers, it should simply refer the customers to the website and telephone hotline referenced in the long-form notice.

A district court has a duty under Rule 23(d) to preserve the integrity of the class action process. <u>In re Potash Antitrust Litig.</u>, 896 F. Supp. 916, 920 (D. Minn. 1995). "Once a class has been certified, the rules governing communications apply as though each class member is a

client of the class counsel. . . . Defendants' attorneys, and defendants acting in collaboration with their attorneys, may only communicate through class counsel with class members on matters regarding the litigation." Manual for Complex Litigation (Fourth) § 21.33 (2016). When class members have an ongoing relationship with the defendants in a class action, it is expected that some class members may attempt to direct their inquiries about the class action to the defendants. Id. "The judge has ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class." Id.

     The Court will allow SuperValu to disseminate an abbreviated version of its proposed letter. The letter will briefly explain that federal court rules limit SuperValu's ability to discuss the lawsuit with its customers now that classes have been certified. The long-form notice already includes this information, but it is located deep within the long-form notice on page 7. Repeating this information in a short one-page letter better ensures that SuperValu's customers will be given an explanation for why SuperValu is not discussing the lawsuit with them. The letter also explains that "the claims in this lawsuit pertain to the period between September 2003 and September 2008, and none of the allegations in this case implicate SUPERVALU's current prices or customer relationships." Including this information in a short letter will clarify any confusion customers may have about whether their current prices are impacted by the lawsuit. The information in the letter is content neutral and is not coercive. Therefore, a shortened version of SuperValu's proposed letter is approved. An abbreviated version of SuperValu's telephone script is also approved.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Approval of the Form of Class Notice and Plan of Notice [Docket No. 684] is **GRANTED IN PART and DENIED IN PART** as stated above; and

2. Defendants SuperValu, Inc. and C&S Wholesale Grocers, Inc.'s Motion for Approval of Limited Customer Communications Program [Docket No. 688] is **GRANTED IN PART** as stated above.

### Class Notice

3. The Court approves the long form of notice which is attached as Exhibit A ("Long Form Notice"), the creation of a case-specific website based on the content attached as Exhibit B ("Website Content"), and the creation of a toll-free number using the script attached as Exhibit C ("Toll-Free Script").

4. The Court also appoints JND Legal Administration LLC as the Notice Administrator. The Administrator shall provide notice of the classes certified as provided herein.

    a. The Administrator shall cause the Long Form Notices, substantially in the forms attached as Exhibit A, to be mailed, by first class mail, postage prepaid, on or before May 1, 2017 to all Class members at the address of each as stated in the records of Defendants, or who otherwise can be identified through reasonable efforts of the Defendants. On or before May 5, 2017, the Administrator will file with the Court proof of distribution of the Class Notice.

    b. The Claims Administrator shall cause creation of the case-specific website ("Website"), substantially in the form attached as Exhibit B, to be made publicly available and updated with relevant court information and documents.

    c. The Claims Administrator shall cause creation of the toll-free number, substantially in the form attached hereto as Exhibit C, to be available 24 hours a day, 7 days a week that class members may call for more information about the lawsuit.

### Exclusion Rights and Procedure

5. Each class member shall have the right to be excluded from the Classes by utilizing a separate opt-out form that shall be included with the Long Form Notice and mailed to the Administrator no later than July 1, 2017. Class members may also exclude themselves

       from the Classes by completing and submitting an electronic opt-out form on the Website no lather than the July 1, 2017 deadline for exclusion.

6. No later than 30 days after the deadline for exclusion, Class Counsel shall file with the Court a list of all persons and entities who have timely requested exclusion from the Classes.

7. Except for those potential members of the Classes who file a timely request for exclusion, all others will be deemed members of the Class.[4]

### SuperValu's Limited Customer Communications Program

8. Following the mailing of the Long Form Notice, SuperValu is authorized to mail its current customers a letter on SuperValu letterhead based on the content attached as Exhibits D (to be sent to members of the Champaign DC Non-Arbitration Class, which brings claims against both Defendants) and Exhibit E (to be sent to class members of the remaining Classes, which bring claims against C&S only).

9. SuperValu is also authorized to utilize the telephone script based on the content attached as Exhibit F.

                                        BY THE COURT:

                                        s/Ann D. Montgomery
                                        ANN D. MONTGOMERY
                                        U.S. DISTRICT JUDGE

Dated: March 1, 2017.

---

    [4] Except the following persons and entities that are excluded from all of the five Classes: (1) the Court and its officers, employees, and relatives; (2) Defendants and their parents, subsidiaries, affiliates, shareholders, employees, and co-conspirators; (3) government entities; (4) any customer of either Defendant who, prior to C&S and SuperValu's September 6, 2003 AEA, entered into a contract with either Defendant that established the prices (including upcharges) the customer would pay for wholesale grocery products and related services throughout the entire Class Period and who did not amend or renegotiate the prices set in such contract during the Class Period; or (5) Tops Friendly Markets, LLC and The Great Atlantic & Pacific Tea Company, Inc. (also known as A&P), Coborn's, Inc., and Minter Weisman Co.